JOHN E. FREIBURGER and PARTNERS
WEALTH MANAGEMENT, INC.,

      Plaintiffs,

    v.

KEVIN J. TIMMERMAN, BRADLEY J. LEWIS,
and STEELE CAPITAL MANAGEMENT, INC.,

      Defendants.

and

STEELE CAPITAL MANAGEMENT, INC.,

      Counter-plaintiff,

    v.

JOHN E. FREIBURGER and PARTNERS
WEALTH MANAGEMENT, INC.,

      Counter-defendants.

No. 13 CV 8174

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Steele Capital Management, Inc. is a registered investment advisor. For many years, John Freiburger referred clients to Steele in exchange for a portion of the fees collected from those clients. Around August 2012, Freiburger—through his closely affiliated company, Partners Wealth Management, Inc.—launched a new investment management platform and asked clients to switch from Steele to this new platform. Steele—through two of its employees, Kevin Timmerman and Bradley Lewis—sent letters to clients, asking them not to switch. In response,

Freiburger and Partners Wealth sent their own letters to clients, explaining their decision to move to a new platform. Freiburger and Partners Wealth sued Steele, Timmerman, and Lewis. Steele counterclaimed against Freiburger and Partners Wealth. Each side asserts various contract and tort theories.

Steele answered the complaint, but Timmerman and Lewis move to dismiss the claims against them individually, arguing that they acted only in their corporate capacities and are therefore protected by a qualified privilege. For the reasons discussed below, that motion is denied.

Freiburger and Partners Wealth move to dismiss certain counterclaims, for a variety of reasons. For the reasons discussed below, that motion is granted in part and denied in part.

## I. Legal Standards

The motions to dismiss are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For each motion, I construe the complaint (or counter-complaint) in the light most favorable to the non-moving party, accept as true all well-pleaded facts, and draw reasonable inferences in favor of the non-moving party. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Statements of law, however, need not be accepted as true. *Id*. Rule 12(b)(6) limits my consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive a motion under Rule 12(b)(6), the complaint or counter-complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.    Facts[1]

Steele is a registered investment advisor—for a fee, it advises clients about buying and selling securities. Counter-complaint ¶¶ 1, 11–13. Timmerman is Steele's co-owner and president, and Bradley Lewis is a senior manager. Complaint ¶¶ 3–4. Beginning in 1998, Freiburger referred clients to Steele, in exchange for 60% of the fees collected from those clients. Complaint ¶¶ 9, 11; Counter-complaint ¶¶ 2, 14. In November 2000, the parties entered into a "Branch Office Agreement," which memorialized aspects of their arrangement. Counter-complaint ¶ 20.

Around August 2012, Freiburger—through his "closely affiliated" company, Partners Wealth—launched a new investment management platform and asked clients to switch from Steele to this new platform. Complaint ¶ 12; Counter-complaint ¶¶ 2, 27–28, 37. In response, Steele—through Timmerman and Lewis—sent letters to clients, describing the split and asking them not to switch. Complaint ¶¶ 13–28. The letters stated, for example, that switching to Freiburger's new services was not in clients' best interests; that Freiburger had created a conflict of

---

[1] The facts are taken from the complaint [1], which is cited as "Complaint," and the counter-complaint [15], which is cited as "Counter-complaint."

interest between himself and his clients; and that Freiburger's move was motivated by his business's financial struggles. Complaint ¶¶ 13–28. Freiburger responded, writing to clients that he knew the split caused them concern, and that the decision to move to a new platform was based on an in-depth evaluation conducted with the goal of creating a better experience and better outcomes for clients. Counter-complaint ¶ 66–67. About 70 clients switched. Counter-complaint ¶ 4, 40.

## III.   Timmerman and Lewis's Motion to Dismiss

### A. Application of a Qualified Privilege

Timmerman and Lewis argue that the claims against them should be dismissed because they were acting in their corporate capacities, and should therefore be covered by a qualified privilege. In the context of a defamation case, "[a] qualified privilege protects communications that would normally be defamatory and actionable. . . . To determine if a qualified privilege exists, a court looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." *Pompa v. Swanson*, 990 N.E.2d 314, 321 (2d Dist. 2013).

One context in which a qualified privilege exists is a "union meeting . . . concerning official union business." *Id. See also Sullivan v. Conway*, 157 F.3d 1092, 1098 (7th Cir. 1998) ("It would be a disservice to the administration of unions and other organizations if the responsible officers of these organizations were inhibited by fear of defamation suits from making, within the confines of nonpublic meetings devoted to the affairs of the organization, candid criticisms of

persons who might be friends of a person attending the meeting."). Another such context is an employer's internal investigation of alleged misconduct by its employees. *Popko v. Cont'l Cas. Co.*, 355 Ill.App.3d 257, 264 (1st Dist. 2005). Timmerman and Lewis have not cited any case, nor am I aware of any, holding that the threat of losing customers to a competitor creates a context in which otherwise defamatory statements are protected by a qualified privilege. The statements at issue here were not made internally, but to outside clients. There is no policy as a matter of law that permits an officer to defame a competitor to customers on the occasion of a customer deciding to take business elsewhere. The qualified privilege does not apply to this case.

Moreover, even where a qualified privilege exists, the privilege can be abused, leading to tort liability. *Id.* at 264–65. Whether a privilege was abused is a question of fact. *Pompa*, 990 N.E.2d at 321 (2d Dist. 2013); *Zych v. Tucker*, 363 Ill.App.3d 831, 834–35 (1st Dist. 2006) ("[T]he scope of protection afforded by a qualified privilege can be exceeded and the privilege thereby defeated in circumstances where 1) false statements are made with malice or a reckless disregard for their truth, 2) the statements are not limited in scope, or 3) publication is not limited to proper parties."); *id.* at 837 ("[T]he question of whether the defendant's statements were made with malice is one of fact for the jury to decide."); *Lacien v. Phonak, LLC*, 2011 U.S. Dist. LEXIS 139768, \*11–12 (N.D. Ill. 2011) ("Even if the Court were to consider whether the qualified privilege applies,

the application of the privilege necessarily raises factual questions that are not properly resolved at this stage of ligation.").

Timmerman and Lewis ask me to dismiss the claims against them because "[n]either man acted for personal gain, and neither man acted maliciously or simply in order to harm Plaintiffs." [12] ¶ 13. Those are facts that I cannot find at this stage. Accordingly, the motion to dismiss the claims against Timmerman and Lewis on the basis of a qualified privilege is denied.

### B. Count-specific Arguments

Timmerman and Lewis also advance count-specific arguments in support of their motion to dismiss. Count I alleges defamation *per se*. Illinois law recognizes five categories of statements which are considered actionable *per se*, but only two are relevant here: statements imputing an inability to perform or want of integrity in the discharge of duties of office or employment; and statements that prejudice a party, or impute lack of ability, in his or her trade, profession or business. *Moore v. PETA, Inc.*, 402 Ill.App.3d 62, 68 (1st Dist. 2010). Timmerman and Lewis—in a single paragraph, in a conclusory fashion and with no citation to supporting authority—assert that their statements were "made in a chagrined and embarrassed tone, with no obvious malicious intent whatsoever," and so do not fall into one of the five categories of statements that can be defamation *per se*. [12] ¶ 18. To the contrary, drawing reasonable inferences in plaintiffs' favor, the alleged

statements directly attack their profession or business and attack Freiburger's integrity.[2] Accordingly, Count I states a claim.

Count II alleges tortious interference with prospective business relations. Under Illinois law, to prevail on such a claim "a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511–12 (1991); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd., USA*, 384 Ill.App.3d 849, 862 (1st Dist. 2008). Timmerman and Lewis—again in a single paragraph, in a conclusory fashion—assert that the complaint fails to allege "fact[s] that would demonstrate" that (1) Freiburger and Partners Wealth's expectation of convincing clients to switch was reasonable; or that (2) Timmerman and Lewis's attempts to stop the switch were unjustified. [12] ¶ 20. But detailed fact pleading is not required, and Timmerman and Lewis are on notice of the allegations against them. *See Cook v. Winfrey*, 141 F.3d 322, 327–28 (7th Cir. 1998) (reversing Rule 12(b)(6) dismissal of claim for tortious interference with prospective business relations). Timmerman and Lewis also argue that Freiburger and Partners Wealth have not been harmed,

---

[2] *See, e.g.*, Complaint ¶ 16(h) ("The DFA funds that we believe John is recommending to you have not performed well."); ¶ 20(e) ("What John is doing creates a huge conflict of interest between him and his clients."); ¶ 26(b) ("I have always been held to a fiduciary standard of care, requiring me to put my clients' interests ahead of my own. It appears PWM does not subscribe to this standard of care."); *see also* [1-4] ("conflicts of interest are nothing new to John").

because "all of the relevant accounts" actually did switch from Steele to the new platform. [12] ¶ 20. That is a fact that I cannot find at this stage.[3]

Concerning Count III (commercial disparagement), Timmerman and Lewis first state that it is "disputed" whether commercial disparagement is a recognized tort in Illinois, distinct from defamation. [12] ¶ 22. The Seventh Circuit has stated that under Illinois law, product disparagement and defamation are distinct torts. *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993–94 (7th Cir. 2004) (citing *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 (7th Cir. 1983) (Illinois law); *Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869 (1978)), and therefore I consider them separate torts. Timmerman and Lewis next argue that their statements "are simply not strong or harsh enough" to be "demeaning," as required to state a claim for commercial disparagement. That's a fact that I cannot find at this stage.[4] Finally, Timmerman and Lewis argue that their statements did not concern "Mr. Freiburger's ability to provide sound financial advice or the quality of his services." [12] ¶ 24. I disagree. Statements that Freiburger creates conflicts of interest and does not act in his clients' best interest, and that the firm does not

---

[3] If a significant number of clients *did* switch, that might undermine the argument that Freiburger and Partners Wealth's expectation that some clients *would* switch was merely speculative. *See Quantum Foods v. Progressive Foods, Inc.*, 2012 U.S. Dist. LEXIS 162484, *6–7 (N.D. Ill. 2012) (denying motion to dismiss where allegations of plaintiff's track record with existing clients raised its allegations of business expectancy above the merely speculative level).

[4] Notably, some of the statements suggest that Freiburger commonly creates conflicts of interest between himself and his clients, *see* [1-4], and such statements could be understood to be demeaning of Freiburger's investment management services.

adhere to the requisite standard of care, are about Frieburger's financial advice and the quality of his service.[5]

For the foregoing reasons, Timmerman and Lewis's motion to dismiss is denied.

## IV. Freiburger and Partners Wealth's Motion to Dismiss Certain Counterclaims

### A. Count II (Unjust Enrichment)

In Count II of the counter-complaint, Steele asserts a claim for unjust enrichment against both Freiburger and Partners Wealth. Partners Wealth did not move to dismiss Count II, but Freiburger did, arguing that it is duplicative of Count I (a breach of contract claim asserted against Freiburger alone).

"A claim for unjust enrichment is based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application." *Blythe Holdings, Inc. v. Deangelis*, 750 F.3d 653, 658 (7th Cir. 2014) (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 497 (1992)). "Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *Id.* (citing *LaThrop v. Bell Fed. Savs. & Loan Ass'n*, 68 Ill.2d 375, 391 (1977)); *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). Therefore, "[u]nder Illinois law, an

---

[5] In addition to the allegations excerpted in note 2, above, *see, e.g.*, Complaint ¶ 16(a) ("transferring your assets to John Freiburger's new platform is not in your best interests"); ¶ 18(a) (same); ¶ 16 (b) ("Moving your account may be beneficial to John, but I can't see how it benefits you at all."); ¶ 18(d) ("It appears John has somehow convinced himself that raising your fee and using index funds is in your best interests. But how could it be? Charging a client 1.15% to construct a portfolio of index funds is ridiculous!"); ¶ 26(b) ("I can't fathom any reason (that benefits you) for PWM to move your account to their broker/dealer's platform.").

unjust enrichment claim cannot survive where that claim expressly incorporates earlier allegations as to the existence of a contract." *Iron Range Capital Partners, LLC v. Osprey Capital, LLC*, 2014 U.S. Dist. LEXIS 143551, *15–16 (N.D. Ill. 2014).

In Count II, Steele: (1) incorporated by reference its breach-of-contract allegations from Count I; and (2) specifically alleged that Freiburger's relevant actions "have been in breach of a contract between Freiburger and [Steele]." Counter-complaint ¶¶ 56, 58. Under the precedent discussed above, that requires dismissal of the unjust enrichment claim against Freiburger.

### B. Count III (Defamation *Per Se*)

In Count III, Steele asserts that a letter sent to clients by Freiburger, on behalf of Partners Wealth, was defamatory. "An Illinois defamation action may state a claim either for defamation *per se* (statements so harmful to reputation that damages are presumed) or defamation *per quod* (statements requiring extrinsic facts to show their defamatory meaning)." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). If the claim is *per quod*, the plaintiff must "itemize his losses or plead specific damages of actual financial injury." *Id.* at 927. Under federal pleading standards, "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). *See Muzikowski*, 322 F.3d at 924 (Rule 9(g) applies to state-law defamation cases in federal court).

Steele has not itemized its losses or pleaded specific damages. Instead, it argues that the letter was defamatory *per se*. As discussed earlier, of the five categories of defamation *per se*, only the categories related to employment, professional or business integrity and ability are relevant here. *See Moore v. PETA,*

10

*Inc.*, 402 Ill.App.3d at 68. Steele argues that the letter is defamatory *per se* because it "intentionally avers that [Steele] lack[s] the ability to do [its] job[] and perform [its] services." [26] at 5. In its counter-complaint, Steele included the following excerpts from Freiburger's letter:

> In May 2011, we decided to begin an in-depth evaluation of our current investment offering with the goal of creating a better experience and outcomes for our clients. It was important for us, as fiduciaries, that any investment methodology we advocated was empirically supported. It was on this basis that we made the decision to begin to move assets away from Steele Capital Management and to a new in-house platform anchored by Dimensional Funds Advisors.
>
> . . .
>
> We know this causes each of you some concern and wish that we did not have to go down this path.

Counter-complaint ¶¶ 66–67.

Steele also attached the entire letter as an exhibit. *See* Counter-complaint Ex. 1. The letter explicitly contains Freiburger and Partners Wealth's *beliefs* (*e.g.*, that the new platform "will give [clients] the best chance of reaching [their] long-term financial goals") and *opinions* (*e.g.*, that Steele "has handled [the situation] in an extremely unprofessional manner"). *See* Counter-complaint Ex. 1. There is nothing objectively false, either in the excerpts or the letter as a whole, that can give rise to a claim for defamation *per se*. "Vague, unprovable statements and statements of opinion do not give rise to a defamation claim" because "Illinois law requires that the allegedly defamatory statement must contain an objectively verifiable factual assertion." *Lifton v. Bd. of Educ. of the City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (citing *Wynne v. Loyola Univ.*, 318 Ill.App.3d 443 (2000)).

Steele urges that "a statement that might otherwise be characterized as harmless opinion becomes actionable defamation when it falsely claims or implies to be based on actual facts, or in this case 'empirical' support." [26] at 5. In other words, while all agree that the statement, "I think Bob is not a good accountant" is non-actionable opinion, Steele contends that the statement, "Based on an empirical study I conducted, I think Bob is not a good accountant" is actionable, if the declarant had not conducted an empirical study. In support, Steele cites *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2005) and *Lifton*, 416 F.3d at 579, but neither case stands for such a proposition; they merely note the distinction between opinion and verifiable factual assertion. Even if prefaced by a factual assertion, if the statement as a whole would be understood to be expressing an opinion it is not defamatory.

Because the letter does not contain objectively false statements about Steele that fall into one of the defamation *per se* categories, Count III is dismissed.

### C. Count IV (Breach of Fiduciary Duty)

Count IV alleges that Freiburger breached a fiduciary duty owed to Steele. Because Steele is an Iowa company, Iowa law controls. *CDX Liquidating Trust v. Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011).[6] To state a claim for breach of fiduciary duty under Iowa law, a plaintiff must plead (among other things) facts showing that the defendant owed the plaintiff a fiduciary duty. *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801–02 (8th Cir. 2013) (Iowa law). "A

---

[6] Steele pointed this out in its response brief ([26] at 8 n.2), but Freiburger, in both his opening and reply briefs, relied solely on Illinois and 7th Circuit cases.

fiduciary duty exists between two entities when one of them is under a duty to act for or to give advice for the benefit of [the other] upon matters within the scope of the relationship." *Id.* (internal marks and citations omitted).

Freiburger argues that Steele did not sufficiently plead facts showing that he owed a fiduciary duty. In response, Steele argues that it alleged that "Mr. Freiburger was during relevant times an officer, an employee, an investment advisor representative, a contractual counter-party, and/or an agent of [Steele]." [26] at 9 (citing Counter-complaint ¶¶ 14–26).[7] Steele also notes that it alleged that Freiburger and Steele held themselves out as "partners." [26] at 9; *see also* Counter-complaint ¶¶ 18–19, 21, 26, 74. Steele argues that it therefore alleged facts showing that Freiburger occupied a position of trust and power, and therefore owed a fiduciary duty. [26] at 9–10. Courts applying Iowa law state that "because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case." *Schuster v. Anderson*, 378 F.Supp.2d 1070, 1108, 1109 (N.D. Iowa 2005) (quoting *Wilson v. IBP, Inc.*, 558 N.W.2d 132 (Iowa 1996)). Similarly, citing the Iowa Supreme Court, the Eighth Circuit has noted that the determination as to whether a fiduciary relationship exists is ordinarily a fact issue. *Employers Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc.*, 422 F.3d 776, 780 n.2 (8th Cir. 2005) (citing *Davis v. Ottumwa Young Men's Christian Assoc.*, 438 N.W.2d 10, 17 (Iowa 1989)).

---

[7] As Freiburger pointed out in reply ([30] at 6), Steele's counter-complaint did not allege that Freiburger was an "officer" of Steele, contrary to Steele's present representations.

Accordingly, though it may ultimately fail to prove that Freiburger owed a fiduciary duty, at the present stage Steele states a claim.

### D. Count VI (Breach of Oral Contract)

In Count VI, Steele alleges that Freiburger breached an oral contract that the parties entered, concerning client referrals. "In the context of contract formation, courts in the Seventh Circuit have interpreted Rule 8 to require a plaintiff to plead only the bare essentials of offer, acceptance, consideration, performance by the plaintiff and breach by the defendant causing the loss. At the pleading stage, plaintiffs need only allege—rather than prove—the existence of a valid contract." *Coburn Group, LLC v. Whitecap Advisors LLC*, 2009 U.S. Dist. LEXIS 4972, *4–5 (N.D. Ill. 2009) (internal marks and citations omitted). Steele satisfied these minimal pleading requirements (*see* Counter-complaint ¶¶ 92–99), and Freiburger does not argue otherwise.

Nonetheless, Freiburger moves to dismiss this count as inconsistent with Count I, which alleges that Freiburger breached the parties' written Branch Office Agreement. [22] at 9–10. Specifically, Freiburger argues that the parties' course of dealing under the Branch Office Agreement cannot be used to contradict the terms of that agreement or to give rise to a separate oral agreement. [22] at 9–10. Freiburger's arguments are misplaced. Steele alleges that an oral contract was formed in 1998, two years before the Branch Office Agreement was signed. Counter-complaint ¶¶ 21, 92. The alleged oral contract is therefore separate from the Branch Office Agreement. As Steele correctly points out in response ([26] at 11), two parties may enter into more than a single contract. *See Borg-Warner Corp. v. Anchor*

14

*Coupling Co.*, 16 Ill.2d 234, 244 (1958) ("A contract is not rendered void because the parties thereto contract or agree to contract concerning additional matter."). Though Steele may eventually have difficulty proving the existence and terms of the alleged oral contract, its allegations are sufficient at this stage.

## V.    Conclusion

For the foregoing reasons:

- Timmerman and Lewis's motion to dismiss [12] is denied.

- Freiburger and Partners Wealth's motion to dismiss [22] is granted in part and denied in part as follows: (a) the unjust enrichment count (Count II) is dismissed as to Freiburger, but not as to Partners Wealth; (b) the defamation *per se* count (Count III) is dismissed; (c) the breach of fiduciary duty claim (Count IV) is not dismissed; and (d) the breach of oral contract claim (Count VI) is not dismissed.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  10/23/14

15